JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Alfred Worwell guilty of one count of rape and one count of kidnapping. The jury also found his co-defendant, Kevin Johnson, guilty of the same offenses. The nature of the issues raised on appeal are such that Worwell does not dispute the evidence; therefore, a statement of the facts is unnecessary to the resolution of the issues raised on appeal.
 I {¶ 2} Worwell's first argument is that the court erred by failing to voir dire the entire jury panel to ensure their impartiality in light of revelations raised by a juror that she had seen Worwell following her into a parking lot one evening after deliberations had ended for the day.
 {¶ 3} During deliberations, the jury foreman sent the court the following note:
 {¶ 4} "[Juror Number 2] was observed by Alfred Worwell entering her vehicle on October 2nd approximately 5:45 p.m. [Juror Number 2] was walking with [Jurors Number 6 and 8]. We would want this noted for the record. This may or may not be of concern."
 {¶ 5} Defense counsel joined in a motion for a mistrial on grounds that the entire jury panel might have abandoned the presumption of innocence if they believed that Worwell's actions were somehow menacing to them.
 {¶ 6} The court questioned Juror Number 2, who told the court that she and the two other jurors had been walking to a parking lot after they had recessed their deliberations for the evening. The juror turned around to check for other traffic and saw Worwell and two females walking "quite a while behind us." She entered her car, saying that she was "conscious" of Worwell, but had not made any eye contact with him. The juror discussed what had happened with the other jurors at the start of the next day's deliberations. The jury unanimously decided to inform the court, but did not send the court a note until just before noon. The juror assured the court that what had happened gave rise to no concerns about her personal safety. She confessed that she was "just probably over-zealous" in alerting the other jurors to what had happened. The court obtained the juror's assurances that she could continue to deliberate fairly. Defense counsel asked the court to voir dire the other eleven members of the jury. The court denied the request.
 {¶ 7} The general rule is that the court must hold a hearing when it learns of an improper communication with a juror. See State v.Stallings, 89 Ohio St.3d 280, 2000-Ohio-164. It is the accused's burden to show that the communication biased the juror and that the accused was prejudiced by the bias. State v. Keith (1997), 79 Ohio St.3d 514, 527. There are no hard and fast rules dictating how the court should rule in circumstances like those arising here. Each jury panel is different, as are the facts that give rise to questions raised by juries. For this reason, we employ an abuse of discretion standard in reviewing the court's actions. State v. Phillips (1995), 74 Ohio St.3d 72, 89.
 {¶ 8} The case law which we have cited to is premised on the idea that there has been a "communication" with a juror. The term "communication" is sufficiently broad to encompass both verbal and non-verbal acts. Verbal communications are self-evident. Non-verbal communications could take any number of forms; for example, drawing a finger against one's throat in a slashing motion or pointing a finger at a person as though the finger were the barrel of a gun and the thumb the hammer of the gun.
 {¶ 9} But none of that happened here. Worwell said nothing to the juror. Moreover, he engaged in no non-verbal communication of any kind. The juror could not even say that she made eye contact with Worwell. She could only say that he and two companions were "quite a while away" while walking behind her and the other two jurors.
 {¶ 10} Given the dearth of facts to show any kind of intimidation by Worwell, we cannot find the court abused its discretion by refusing to voir dire all the jurors about the incident. Juror Number 2 told the court that she only mentioned what had happened to the other jurors out of an abundance of caution. Mindful that the court had told them not to have any contact with the parties during the trial, the jurors discussed whether this amounted to some form of contact that required intervention by the court. Juror Number 2 said that none of the jurors expressed any concern for their own safety. The jurors and Worwell had simply parked their cars in the same parking lot. The court had no need to chase rabbits.
 {¶ 11} Worwell relies on Cunningham v. St. Alexis Hosp. Med. Ctr. (2001), 143 Ohio App.3d 353, for the proposition that the court erred when it failed to question all the jurors. Cunningham is not on point as that case involved alleged juror misconduct, not intimidation by the accused. Moreover, the Cunningham panel found it significant that the court failed to question the actual juror who had been alleged to have committed misconduct. Here, the court did consult the juror who brought the matter to the court's attention.
 II {¶ 12} Worwell next complains that the court erred by permitting the doctor who examined the victim to state that he had been affected by the victim's emotions during his examination. After the doctor said that he had an independent recollection of the victim, the state asked him how that was possible in light of his claim that he had examined thousands of patients during his career. The doctor replied, "[the victim] stood out because she was so hysterical and the story running out naked in the street is not something that normally is a part of it. Frankly, you know, even though as professionals we don't act on it, we all are human beings and have feeling that * * *." Co-defendant Johnson's counsel objected, but the court overruled the objection. The doctor went on to say that the victim's hysterical condition made him very aware of the necessity of not imparting any more discomfort to her. He then noted that a screaming and yelling patient made him more emotionally involved in the treatment than he would be if the patient were calm — "and this hit a cord [sic.]. You know, I'm a human being." Worwell argues that the court should not have permitted this testimony because it was irrelevant, vouched for the victim's credibility, and otherwise prejudicial.
 {¶ 13} The court has very broad discretion in the admission of evidence and will not be reversed on appeal absent an abuse of discretion that has materially prejudiced the defendant. State v. Maurer (1984),15 Ohio St.3d 239, 265.
 {¶ 14} We find nothing prejudicial in the testimony. The offending testimony came in response to a question of how the doctor could recall his treatment of the victim when he had treated so many patients in the past. In giving his response, the doctor noted that the victim had been "hysterical," screaming and yelling while receiving treatment. Her condition had an emotional effect on him, causing to remember her with more clarity than might be the case had she presented in a less emotionally aroused state.
 {¶ 15} As for the claim that the doctor's testimony created sympathy for the victim, we must point out that the victim appeared to be just as emotional on the witness stand as she was in the hospital emergency room. At least once during her testimony, the court had to give her time to compose herself. Nothing the doctor said would have created any more sympathy for the victim than her own testimony did. On this record, we cannot say that the doctor's testimony was unfairly prejudicial.
 III {¶ 16} Worwell's final argument is that the court erred by sentencing him for rape and kidnapping as the offenses were allied under R.C. 2941.25. The state concedes that the court erred. While we have our doubts about the wisdom of the state's concession (the evidence could be construed to show that the restraint of the victim's liberty was separate from her rape), we have no reason to disregard that concession in light of the court's decision to impose concurrent sentences. This court has previously held that a defendant suffers no prejudice when he is sentenced to concurrent sentences for allied offenses. State v. Blaylock, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580, at ¶ 77; State v. Hendrix
(June 13, 1991), Cuyahoga App. Nos. 58519 and 58520; State v. Styles
(Oct. 9, 1997), Cuyahoga App. No. 71052. Consequently, we overrule the final assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and TERRENCE O'DONNELL, J., CONCUR.